**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **DESIREE ARMSTRONG**<br>**1120 Connecticut Avenue, NW**<br>**Suite 500**<br>**Washington, DC 20036**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**<br>**300 7th Street, S.W.**<br>**Washington, D.C. 20024**<br><br>***Defendant.*** | **Civil Action No.** |

**COMPLAINT**

COMES NOW Plaintiff Desiree Armstrong ("Plaintiff" or "Ms. Armstrong"), by and through undersigned counsel, respectfully submits this Complaint against Defendant Washington Metropolitan Area Transit Authority ("WMATA"), and in support thereof states as follows:

**INTRODUCTION**

This action arises from WMATA's unlawful discrimination, failure to accommodate, and retaliation against Ms. Armstrong based on her disabilities and her requests for and use of reasonable accommodations. WMATA's conduct violated the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.

Ms. Armstrong, a WMATA employee, repeatedly requested and received reasonable

accommodations due to documented physical impairments. Despite approving Ms. Armstrong's telework accommodations, WMATA subjected her to adverse treatment, placed her on a Performance Improvement Plan while she was under active medical restrictions, and terminated her employment on June 17, 2025, immediately after her accommodation period ended, purportedly for performance reasons. WMATA's stated reasons for its actions were false and pretextual, and its conduct constituted unlawful disability discrimination, failure to accommodate, and retaliation.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Rehabilitation Act of 1973.

2. Plaintiff has exhausted all administrative remedies prior to filing suit. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission alleging disability discrimination and retaliation arising from her termination on June 17, 2025. The EEOC issued Plaintiff a Determination and Notice of Rights on February 6, 2026. Because WMATA receives substantial federal funding, Plaintiff's claims are cognizable under the Rehabilitation Act, 29 U.S.C. §§ 701-718. Defendant WMATA has waived its sovereign immunity for suits brought under the Rehabilitation Act by accepting federal funding for its transportation operations. See *Barbour v. Washington Metro. Area Transit Auth.*, 374 F.3d 1161, 1170 (D.C. Cir. 2004).

3. Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in Maryland, Defendant conducts business in Maryland, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Maryland.

4. Plaintiff Desiree Armstrong is an African American female and a citizen of the United

States who resides in Maryland, and was employed by WMATA from August 26, 2024 until her termination on June 17, 2025.

5. Defendant Washington Metropolitan Area Transit Authority ("WMATA") is a governmental body in the form of an interstate compact agency, established pursuant to the laws of the District of Columbia, State of Maryland, and Commonwealth of Virginia. WMATA receives federal funding and maintains its principal office at 300 7th Street, S.W., Washington, D.C. 20024.

**FACTUAL ALLEGATIONS**

6. Plaintiff Desiree Armstrong began working for WMATA on August 26, 2024. At all relevant times, she worked for WMATA as an Executive Assistant, Department Administrator II, and Manager of Administrative Services in the Office of the Chief Transportation Officer.

7. As part of her position, Ms. Armstrong performed primarily administrative, coordination, scheduling, reporting, and communications-related duties. The essential functions of her role could be performed with a telework accommodation.

8. On or about March 1, 2025, Ms. Armstrong suffered a serious knee injury and sought medical treatment. Her medical providers documented that she was unable to work for a period of time and thereafter required work restrictions because of her condition.

9. In the days that followed, Ms. Armstrong provided WMATA with medical documentation supporting her need for workplace accommodations and engaged in WMATA's ADA accommodation process. WMATA was therefore aware of Ms. Armstrong's physical impairment, her work restrictions, and her need for accommodation.

10. Ms. Armstrong's medical condition substantially limited major life activities, including walking, standing, and ambulating without assistance. Her providers documented limited

mobility, fall risk, and the need to telework because of her injury. By April 2025, Ms. Armstrong had been diagnosed with an ACL tear and meniscus tear, and her providers continued to certify her need for telework and other work restrictions.

11. WMATA approved Ms. Armstrong's request for telework as a reasonable accommodation from March 7, 2025 through March 21, 2025.

12. WMATA thereafter approved an extension of Ms. Armstrong's telework accommodation from March 24, 2025 through May 5, 2025.

13. As Ms. Armstrong's condition continued, she submitted additional medical documentation in support of a further extension of her accommodation. WMATA approved an additional telework accommodation from May 6, 2025 through June 16, 2025.

14. Throughout this period, Ms. Armstrong remained qualified to perform the essential functions of her position with the reasonable accommodation of telework. WMATA's repeated approval of that accommodation confirms that Ms. Armstrong could perform her job with such accommodation.

15. Despite Ms. Armstrong's documented medical condition and approved accommodations, WMATA placed her on a Performance Improvement Plan on or about May 5, 2025, while she was still working under active medical restrictions and an approved accommodation.

16. Ms. Armstrong successfully completed the Performance Improvement Plan on or about June 13, 2025.

17. Ms. Armstrong's approved telework accommodation expired on June 16, 2025. On June 17, 2025, immediately after the accommodation period ended, WMATA terminated her employment, purportedly for performance reasons. On June 17, 2025, when Ms. Armstrong

reported to the office she was visibly still disabled, arriving on crutches and wearing a knee brace. Her ACL and meniscus tear had not been surgically repaired, surgery date was still pending, and her doctor had not issued medical clearance for full duty return. The expiration of her accommodation end date did not reflect medical recovery but rather the end of the documented restriction period.

18. WMATA's stated reason for terminating Ms. Armstrong was false and pretextual. Ms. Armstrong had successfully completed the Performance Improvement Plan only days earlier, and the timing of her termination, immediately following the expiration of her accommodation, demonstrates that Defendant's actions were motivated by her disability and her need for accommodation.

## COUNT I
**Violation of Section 504 of the Rehabilitation Act of 1973, as amended**
**29 U.S.C. § § 701-718**
**(Failure to Accommodate)**

Plaintiff incorporates by reference all preceding paragraphs.

19. Congress passed the Rehabilitation Act in 1973, and Section 504 of the Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Section 504 applies specifically to: (1) programs receiving federal funds, (2) executive agencies, and (3) the United States Postal Service. 29 U.S.C. § 794.

20. Section 504 applies broadly—it prohibits "any program or activity" that receives federal financial assistance from discriminating against a qualified individual with a disability. 29 U.S.C. § 794(a). And "program or activity" includes all the operations of:

(1) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

(2) the entity of such State or local government that distributes such assistance and each such department of agency (and each other State of local government entity) to which the assistance is extended, in the case of assistance to a State or local government; . . . any part of which is extended Federal financial assistance. 29 U.S.C. § 794(b).

21. The Section 504 incorporates the American with Disabilities Act's ("ADA") definition of "disability." 29 U.S.C. § 705(9)(B), (20)(B). The ADA defines "disability" as an individual with (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

22. The Rehabilitation Act prohibits discrimination in employment based on disability. An employer discriminates against an employee based on disability when the employer fails to provide a qualified employee with a disability a reasonable accommodation.

23. At all relevant times, Plaintiff was an employee entitled to protection under the Rehabilitation Act in that she was disabled and/or regarded as disabled, and she was capable of performing the essential functions of her position with or without reasonable accommodation.

24. At all relevant times, Defendant was an employer subject to the provisions of the Rehabilitation Act. WMATA, as a recipient of federal funding, is subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

25. While working for WMATA, Ms. Armstrong had a disability and disclosed her disability to Defendant and the need for an accommodation. She was subjected to discrimination based on her disability after she disclosed her disability and need for an accommodation.

WMATA approved Ms. Armstrong's telework accommodation on multiple occasions based on her documented knee injury, limited mobility, fall risk, ACL tear, and meniscus tear, thereby acknowledging both her disability and her need for accommodation. Despite this, WMATA placed Ms. Armstrong on a PIP on or about May 5, 2025, while she was working under active medical restrictions and an approved accommodation, even though she remained qualified to perform the essential functions of her position with telework.

26. In violation of the Rehabilitation Act, Defendant knowingly and intentionally engaged in unlawful discrimination based on Ms. Armstrong's disability by failing to accommodate her disability. Further, rather than continuing to accommodate Ms. Armstrong's disability, Defendant placed her on a PIP and caused her termination on June 17, 2025, immediately after her approved telework accommodation expired.

27. Defendant had no legitimate business reasons for such acts.

28. Defendant would have suffered no undue hardship had it reasonably accommodated Ms. Armstrong's disability. Defendant at all relevant times had actual and constructive knowledge of the conduct described above.

29. As a direct and proximate result of Defendant's violations of the Rehabilitation Act, Plaintiff has suffered damages, including but not limited to lost wages, emotional distress, and other compensatory damages in an amount to be proven at trial.

30. Plaintiff seeks all available remedies under the Rehabilitation Act, including but not limited to compensatory damages, back pay, front pay, emotional distress damages, attorney's fees, and any other relief the Court deems just and proper.

31. Plaintiff believes that in addition to the facts enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

**<u>COUNT II</u>**
**Violation of the Rehabilitation Act of 1973, as amended**
**29 U.S.C. § § 701-718**
**(Disability Discrimination -Disparate Treatment)**

Plaintiff incorporates by reference all preceding paragraphs.

32. The Rehabilitation Act prohibits discrimination in employment based on disability. An employer discriminates against an employee based on disability when the employer treats similarly situated employees who were not disabled more favorably than the disabled employee.

33. At all relevant times, Plaintiff was an employee entitled to protection under the Rehabilitation Act in that she was disabled and/or regarded as disabled, and she was capable of performing the essential functions of her position with or without reasonable accommodation.

34. At all relevant times, Defendant was an employer subject to the provisions of the Rehabilitation Act. WMATA, as a recipient of federal funding, is subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

35. WMATA discriminated against Ms. Armstrong on the basis of disability by subjecting her to disparate treatment and termination because of her impairments and requests for accommodation. After Ms. Armstrong disclosed her disability and need for accommodation, WMATA approved her telework accommodation on multiple occasions based on her documented knee injury, limited mobility, fall risk, ACL tear, and meniscus tear, thereby acknowledging both her disability and her need for accommodation. Despite this, WMATA placed Ms. Armstrong on a PIP on or about May 5, 2025, while she was working under active medical restrictions and an approved accommodation.

36. WMATA's actions were unsupported by legitimate performance concerns. Ms. Armstrong remained qualified to perform the essential functions of her position with telework,

and she successfully completed the PIP on or about June 13, 2025. Nevertheless, WMATA terminated her employment on June 17, 2025, immediately after her approved telework accommodation expired.

37. Defendant at all relevant times had actual and constructive knowledge of the conduct described above.

38. Defendant had no legitimate business reasons for such acts.

39. As a direct and proximate result of Defendant's violations of the Rehabilitation Act, Plaintiff has suffered damages, including but not limited to lost wages, emotional distress, and other compensatory damages in an amount to be proven at trial.

40. Plaintiff seeks all available remedies under the Rehabilitation Act, including but not limited to compensatory damages, back pay, front pay, emotional distress damages, attorney's fees, and any other relief the Court deems just and proper.

41. Plaintiff believes that in addition to the facts enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

## COUNT III
**Violation of the Rehabilitation Act of 1973, as amended**
**29 U.S.C. § § 701-718**
**(Retaliation)**

Plaintiff incorporates by reference all preceding paragraphs.

42. The Rehabilitation Act prohibits retaliation against an employee for requesting reasonable accommodation or opposing disability discrimination.

43. At all relevant times, Plaintiff was an employee entitled to protection under the Rehabilitation Act in that she was disabled and/or regarded as disabled, and she was capable of performing the essential functions of her position with or without reasonable accommodation.

44. At all relevant times, Defendant was an employer subject to the provisions of the

Rehabilitation Act. WMATA, as a recipient of federal funding, is subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

45. Defendant subjected Plaintiff to retaliatory discrimination in violation of the Rehabilitation Act. Plaintiff requested reasonable accommodations for her disability in 2025 and provided WMATA with medical documentation supporting those requests. WMATA approved Plaintiff's telework accommodation on multiple occasions, including from March 7, 2025 through March 21, 2025, from March 24, 2025 through May 5, 2025, and from May 6, 2025 through June 16, 2025.

46. As a result of Plaintiff's requests for accommodation and her need for disability-related telework, Defendant placed her on a PIP on or about May 5, 2025 while she was working under active medical restrictions and an approved accommodation, and ultimately terminated her employment on June 17, 2025, immediately after her accommodation period ended.

47. Defendant's stated reasons for these actions were false and pretextual. Plaintiff successfully completed the PIP on or about June 13, 2025, only days before Defendant terminated her employment. WMATA had no legitimate basis to terminate Plaintiff for performance immediately after she completed the PIP and immediately after her approved accommodation expired.

48. Defendant at all relevant times had actual and constructive knowledge of the conduct described above.

49. As a direct and proximate result of Defendant's violations of the Rehabilitation Act, Plaintiff has suffered damages, including but not limited to lost wages, emotional distress, and other compensatory damages in an amount to be proven at trial.

50. Plaintiff seeks all available remedies under the Rehabilitation Act, including but not limited to compensatory damages, back pay, front pay, emotional distress damages, attorney's fees, and any other relief the Court deems just and proper.

51. Plaintiff believes that in addition to the facts enumerated above, Defendant may have engaged in other discriminatory practices that are not yet fully known.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Issue a declaratory judgment that Defendant's practices towards Plaintiff were violative of her rights under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701-718, and declare Plaintiff eligible to receive equitable and other relief;

B. Enjoin Defendant from discriminating against employees based on their disability;

C. Issue a permanent injunction prohibiting Defendant from engaging in any further acts of discrimination, harassment, and retaliation;

D. Order Defendant to refrain from any action against Plaintiff, or any other person, for participating in or support this case in any manner;

E. Award Plaintiff all available damages, including back pay and front pay and all lost benefits and compensatory damages for emotional distress and hardship created by the Defendant's discrimination;

F. Award payment of all fees, costs, expenses, including attorneys' fees and expert fees;

G. That the Court order Defendant, individually and collectively, to restore leave, pay back-pay in wages and insurance owed, and compensatory damages in an amount no less than $1,000,000;

H. That the Court order Defendant to pay pre-judgment and post-judgment interest as

provided by law;

I. That the Court order Defendant to remove the PIP from Ms. Armstrong's personnel record;

J. Award Plaintiff reasonable attorney's fees and costs pursuant to 29 U.S.C. § 794a(b); and

K. Grant such further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury by all issues so triable.

Date: May 4, 2026

Respectfully submitted,

/s/ David A. Branch

David A. Branch (M.D. Bar No. 22862)
Law Office of David A. Branch &
Associates, PLLC
1120 Connecticut Avenue, NW, Suite 500
Washington, D.C. 20036
Phone: (202) 785-2805
Email: davidbranch@dbranchlaw.com

*Counsel for Plaintiff.*